FILED
2009 Jul-06 PM 02:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

SHUNDRA COATS
O/B/O K.S.C.,

____Plaintiff,

vs.                                                             CASE NO. CV-08-J-2068-S

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

    Defendant.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking Title XVI Supplemental Security Income benefits (SSI) (R. 100A-100G) based on plaintiff's diagnoses of asthma and behavioral problems such as Attention Deficit Hyperactivity Disorder (ADHD) (R. 79A). On appeal, the plaintiff argues that the decision of the Administrative Law Judge (ALJ) should be reversed because the ALJ incorrectly discredited the opinion evidence of several medical sources who indicated that the plaintiff suffers disabling levels of impairment based on behavioral problems. Plaintiff's Memorandum at 7.

The plaintiff[1] alleged a disability onset date of June 3, 2004, when she was 6 years old (R. 100A). The claim was denied at the initial level (R. 80), and a hearing before an ALJ was requested on November 29, 2004 (R. 85). The ALJ found that the plaintiff was not disabled (R. 49-53), but the Appeals Council later remanded the case to the ALJ to obtain additional evidence regarding the plaintiff's mental impairments and to consider additional medical records that were submitted after the hearing and not considered in the ALJ's decision (R. 99-100). A remand hearing was held on January 15, 2008 (R. 55-79), and the ALJ thereafter rendered an unfavorable decision on April 8, 2008 (R. 18-34). The Appeals Council denied the request for review on September 4, 2008 (R. 5-7).

The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED**.

## Factual Background

The plaintiff was born on January 29, 1998 (R. 100A). At the time of the ALJ's decision on April 8, 2008, the plaintiff was 10 years old (R. 59). She is an "A/B" honor roll student (R. 148-51, 225, 346, 356, 441), and a hall monitor at school (R. 441). However, since 2002, the plaintiff has experienced behavioral issues (R. 415) and problems with asthma (R. 281). The plaintiff was first diagnosed with

---

[1] For purposes of this opinion, "plaintiff" refers to the minor, K.S.C.

ADHD and Oppositional Defiant Disorder on August 21, 2002 (R. 390-91). In May 2003 Dr. Ramakrishna Rao, a psychiatrist, also diagnosed the plaintiff with ADHD, Oppositional Defiant Disorder, and Parent Child Relational Issues (R. 383). Her Global Assessment of Functioning (GAF) rating was 50, and Dr. Rao recommended social worker consultation, psychological testing, and medication management. *Id.* He stated that the plaintiff reported having passive suicidal wishes because she "doesn't want to be a kid" (R. 382). Other problems included arguing with adults, trouble concentrating, fighting with cousins and peers, and a history of sad mood and low self-esteem. *Id.* The plaintiff was examined by psychologist Catherine Prince in July 2004 (R. 283-85). Prince noted the plaintiff's past diagnosis of ADHD and prescriptions to Adderall, Metadate, and Ritalin (R. 283). Prince found that she demonstrated symptoms of ADHD and a mood disorder, but further evaluation was needed (R. 285). Prince further stated that the plaintiff functioned at her age level cognitively, but below her age level communicatively, adaptively, socially and behaviorally, and in attention, persistence, and pace. *Id.*

In November 2004 the plaintiff was treated by Srilata Anne, a psychiatrist (R. 371-73). She was diagnosed with ADHD, Oppositional Defiant Disorder, Adjustment Disorder, and a GAF rating of 50. (R. 373). In June 2005 the plaintiff's teacher, Sharon Pollard, completed a Child Development and Functioning Rating form

indicating "marked" limitations in: acquiring and using information; attending and completing tasks; interacting and relating to others; inattention; impulsiveness; and hyperactivity (R. 341-43).  Pollard also found that the plaintiff's health and physical well-being was "extreme" (R. 341).  The plaintiff was hospitalized in December 2005 due to increasing threats to harm herself and depressive symptoms (R. 347).  The plaintiff was discharged with prescriptions for Lexapro and Focalin (R. 348).  Dr. Stephen K. Bell has treated the plaintiff at Children's Hospital from 2002 through 2007 (R. 328-39, 345-95, 441-65).  Dr. Bell noted that the plaintiff's problems improved on medication, but she was disruptive in class and shows increased resistance when she is disciplined (R. 333).  In September 2007 Dr. Bell stated that the plaintiff showed behavioral problems at home both on and off medication (R. 416).  He found that she met the criteria for adjustment disorder with mixed disturbance of conduct and emotion, but it was not clear whether she met the criteria for ADHD or mood disorders.  *Id.*

Dr. Cesar E. Munoz, a pediatric psychiatrist, evaluated the plaintiff in September 2007 (R. 434-36).  He noted that although she is a "B student," she fights with other children and gets in trouble due to behavioral problems (R. 435).  Dr. Munoz noted that she tried to bite her baby brother's finger off, and she tried to strangle her 7-year-old nephew with a string (R. 434-35).  Dr. Munoz stated that she

4

has suffered from severe ADHD since an early age, and her oppositional defiant disorder severely impairs her functioning at school and at home (R. 436). His diagnoses included: ADHD severe type; Oppositional Defiant Disorder; average IQ; severe psychosocial stressors; and a current GAF of 50 with a GAF of 50 in the past year (R. 435). Dr. Munoz also completed a Medical Source Opinion Form (Mental) finding "extreme" limitations in the plaintiff's ability to: respond appropriately to supervisors; use judgment in simple one or two step work-related decisions; deal with changes in a routine work setting; maintain attention, concentration or pace for periods of at least two hours; maintain social functioning; and maintain activities of daily living[2] (R. 437-38). Psychologist Alan D. Blotcky examined the plaintiff in March 2007 (R. 428-30). Blotcky attempted to perform a WISC-III for an evaluation of the plaintiff's intelligence, but the test could not be completed due to her resistive demeanor (R. 429). His diagnoses included ADHD, combined type, Oppositional Defiant Disorder, and asthma. *Id.* He stated that her behavior problems include argumentativeness, breaking rules, physical fighting with peers, bossiness, and stubbornness. *Id.* He concluded that her prognosis was very poor (R. 430). Blotcky also completed a Child Development and Functioning Rating form finding "extreme"

---

[2] It appears that Dr. Munoz was provided with an adult form rather than a child or adolescent form.

limitations in her ability to attend and complete tasks and her ability to interact and relate to others (R. 432). Blotcky found a "marked" limitation regarding the plaintiff's inattention (R. 433).

In his April 8, 2008, decision the ALJ found that the plaintiff was not disabled at any time since June 3, 2004, the date her application was filed (R. 34). The ALJ found the plaintiff's behavioral diagnoses essentially irrelevant since she had been an "A/B" honor student (R. 26). The ALJ rejected Alan Blotcky's report, Dr. Munoz's report, and the questionnaire completed by the plaintiff's teacher, Sharon Pollard (R. 26). The ALJ found the plaintiff to have no limitation in acquiring and using information (R. 28), less than marked limitation in attending and completing tasks (R. 29), less than marked limitation in interacting and relating with others (R. 30), no limitation in moving about and manipulating objects (R. 32), less than marked limitation in the ability to care for herself (R. 33), and less than marked limitation in health and physical well-being (R. 34).

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for 'despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of [the] decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The test to be applied for whether a child may be considered disabled is as follows:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. § 1382c(a)(3)(D). In determining the severity of all impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments. 42 U.S.C. § 1382c(a)(3)(G).

If a child applicant has a severe impairment, the ALJ determines whether such impairment "'causes marked and severe functional limitations' for the child." *Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1278 (11th Cir. 2004); *citing* 20 C.F.R. §§ 416.911(b), 416.924(d).

An impairment causes "marked and severe functional limitations" if the limitations meet, medically equal, or functionally equal the Listings. *Id.* at 1279; *citing* 20 C.F.R. §§ 416.911(b)(1), 416.902, 416.924(a). The applicant's "limitations 'meet' the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment." *Id.* The applicant's "limitations 'medically equal' the limitations in the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'" *Id.*; *citing* 20 C.F.R. § 416.926(a)(2).

If a child's impairments do not meet a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairments to determine whether the functional limitations are "functionally equivalent" to those in the Listings. *Id. See also* 20 C.F.R. § 416.926a.

The regulations define the term "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.902.  In making this determination, the ALJ must assess the degree to which the child's limitations interfere with the child's normal life activities in six specific domains:

> (1) acquiring and using new information
> (2) attending and completing tasks
> (3) interacting and relating to others
> (4) moving about and manipulating objects
> (5) caring for oneself
> (6) health and physical well-being.

20 CFR § 416.926a(b)(1).  An impairment "'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked limitations in two of the domains [above], or an extreme limitation in one domain.'" *Shinn*, 391 F.3d at 1279; *citing* 20 C.F.R. § 416.926a(d); § 416.925(a).  There is also a duration requirement that the impairment has lasted or can be expected to last for a continuous period of not less than 12 months.  20 C.F.R. § 416.906.

## Legal Analysis

The court finds that the record does not support the ALJ's decision.  The ALJ rejected the opinions of a pediatric psychiatrist, a psychologist, and the plaintiff's teacher, all of which found the plaintiff's behavioral problems to be of a level

9

requiring continuous medication and treatment. The evidence of record reflects that the plaintiff has a history of ADHD and Oppositional Defiant Disorder, asthma, fighting with peers, inattentiveness, and suicidal thoughts, among others. Ignoring important medical evidence, the ALJ instead chose to rely on the plaintiff's academic performance as rebuttal for the plaintiff's behavioral issues (R. 26). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

The court is of the opinion that when all of the evidence of record is considered, the plaintiff's limitations functionally equal a listing due to "'marked limitations in two of the domains [above], or an extreme limitation in one domain.'" *Shinn*, 391 F.3d at 1279; *citing* 20 C.F.R. § 416.926a(d); § 416.925(a). The ALJ stated that the plaintiff had less than marked limitation in attending and completing tasks (R. 29), but this conclusion ignores the reports provided by the plaintiff's physicians and teacher. The plaintiff has been treated for ADHD and Oppositional Defiant Disorder since 2002 (R. 390-91). Further, psychologist Alan Blotcky found that the plaintiff had an "extreme" limitation in her ability to attend and complete tasks (R. 432). Testimony from the plaintiff's mother corroborates Blotcky's finding,

as she stated that she constantly has to redirect the plaintiff to finish her homework and finish chores that she was assigned to do (R. 73). The plaintiff's mother stated that medication and counseling have not improved the plaintiff's behavior (R. 76). The plaintiff's teacher, Sharon Pollard, also found that the plaintiff had a marked limitation in attending and completing tasks (R. 342).

Although the plaintiff's "extreme" limitation in the attending and completing tasks domain is sufficient for a finding of disability, medical records also support at least two marked limitations in other domains. The ALJ erroneously found that the plaintiff had less than marked limitation in interacting and relating to others (R. 30). Dr. Blotcky found that the plaintiff had an "extreme" limitation in her ability to interact and relate to others (R. 434). The plaintiff's teacher stated that the plaintiff had a marked limitation in interacting and relating to others (R. 342). Dr. Munoz acknowledged the plaintiff's good grades, but also found that she fights with other children and gets in trouble because of her behavioral problems (R. 434). The plaintiff's mother testified that the plaintiff only has one close friend in their neighborhood, and she does not get along with any of the other children (R. 74). The ALJ also ruled that the plaintiff has less than marked limitation in the ability to care for herself (R. 33). Medical records suggest otherwise. The plaintiff was hospitalized due to increasing threats to harm herself and depressive symptoms (R. 347). *See* 20

C.F.R. § 416.926a(k)(3)(iv) (providing that engaging "in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or . . . ignor[ing] safety rules" are examples of limited functioning in this domain). Dr. Munoz stated that this hospitalization resulted from the plaintiff's attempt to stick a pin in her eye (R. 435). Dr. Rao, a psychiatrist, stated that the plaintiff reported having passive suicidal wishes because she "doesn't want to be a kid" (R. 382). The ALJ cannot arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1995). Given the evidence, as set forth above, the ALJ's opinion that the plaintiff has less than marked limitations in attending and completing tasks (R. 29), interacting and relating to others (R. 30), and the ability to care for herself (R. 33), is against the great weight of the evidence. Therefore, the court finds that because the plaintiff is disabled, she is entitled to benefits as of her alleged onset date, June 3, 2004.

## Conclusion

"When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Secretary should have made." *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D. Fla. 1984); *citing Gardner v. Smith*, 368 F.2d 77, 86 (5th Cir. 1966); *DePaepe v. Richardson*, 464 F.2d 92 (5th

Cir. 1972).  Because the plaintiff is entitled to a finding of disability, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED**.  This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** the 6th day of July 2009.

*/s/ Inge Prytz Johnson*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE